572 P.2d 223
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Leopoldo E. ARELLANO,**
**Defendant-Appellant.**

**No. 3007.**

Court of Appeals of New Mexico.

Nov. 15, 1977.

Jan A. Hartke, Chief Public Defender, Douglas A. Barr, Asst. App. Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Roderick A. Dorr, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

Convicted of tampering with evidence, defendant appeals. One issue involves the trial court's denial of defendant's motion to suppress defendant's answers to questions from the police and defendant's motion to suppress a gun. A scattershot argument for exclusion of this evidence was made to the trial court and renewed on appeal. We need not review the arguments or the testimony at the suppression hearing. There is substantial evidence that defendant was advised of his constitutional rights before making a statement, substantial evidence that defendant was not too drunk to understand the advice given, substantial evidence that defendant had the mental capacity to and did understand his rights, and substantial evidence that defendant answered the questions voluntarily. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App. 1976); *State v. Chavez*, 88 N.M. 451, 541 P.2d 631 (Ct.App.1975); *State v. Courtright*, 83 N.M. 474, 493 P.2d 959 (Ct.App.1972).

**196**

The issue for discussion involves the "tampering" statute. Section 40A–22–5, N.M.S.A.1953 (2d Repl. Vol. 6) reads:

Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another.

Whoever commits tampering with evidence is guilty of a fourth degree felony.

This statute has been referred to, but never interpreted, in appellate decisions. See *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (Ct.App.1975); *State v. Sanchez*, 80 N.M. 688, 459 P.2d 850 (Ct.App.1969).

Defendant contended before the trial court that an "essential prerequisite" to the applicability of § 40A–22–5, supra, is a "determination" that a crime had been committed. On appeal, defendant asserts that the statute is not applicable unless there is a showing that the police had " 'cause to believe' " that a crime had been committed. On appeal, the State argues "all that is required is that the State have the probable cause that is requisite for the apprehension or initiation of prosecution of an individual for a suspected crime." We do not agree with any of these contentions.

▇ Section 40A–22–5, supra, was enacted as a part of the article in the Criminal Code which pertains to interference with law enforcement. Laws 1963, ch. 303, art. 22. Section 40A–22–5, supra, deals with interference by tampering. The statute is worded in terms of defendant's actions in connection with physical evidence and requires the action of defendant to be with intent "to prevent the apprehension, prosecution or conviction of any person" or with intent "to throw suspicion of the commission of a crime upon another." These intent requirements can be met regardless of whether a crime has in fact been committed and regardless of any belief or knowledge by the police concerning crimes or suspected crimes, or cause by the police to apprehend an individual. The facts of this case illustrate our view of § 40A–22–5, supra.

The police were notified that Mares had been brought to the hospital because of a gunshot wound. Mares died from this wound a short time later. At the hospital, defendant told the police that Mares had shot himself. At that time, the police had no reason to place anyone under arrest, they figured it could have been "a legimate [sic] suicide". At the hospital, the police asked defendant to go to the police station to make a statement. It is uncontradicted that defendant voluntarily went to the police station.

The question and answer session at the police station was tape recorded. Shortly after the "advice of rights" at the beginning of the interview, defendant asked if he was a suspect. The interrogator stated: "At the moment the reason you are a suspect is because you were in the vehicle when it happened, we need to get the story put together". At this point, the police were doing no more than trying to obtain defendant's account of the shooting of Mares.

We do not know at what time or in what sequence the police acquired the following information. Mares, Griego and defendant had been drinking and driving around in Mares' car. Eventually they arrived at a service station located at the west side of Tucumcari. Griego went inside the service station. Mares was in the driver's seat and defendant was in the back seat at the time Mares was shot. Defendant fetched Griego from the service station; defendant and Griego took Mares to the hospital. Mares was shot in the back of the head, about one inch in from the left ear along the line of the mastoid bone. In addition to the entry hole, the bullet fractured the skull above the right eye near the hairline. From the black powder around the entrance wound, the medical examiner was of the opinion the gun had been fired from a distance of three to five inches from Mares' head. The medical examiner stated it could have been either homicide or suicide. A determination of murder or suicide was never made because of what defendant did with the gun.

At the time the police questioned defendant, they knew that Mares had been shot and that defendant said that Mares shot himself. The police were looking for the gun. The tampering offense occurred *before* the police ever talked with defendant; it occurred *before* the police knew the shooting had occurred. There is evidence that enroute to the hospital, defendant went by his brother's home, gave the brother the loaded gun and asked the brother to "hold it for him". The brother unloaded the gun and wiped it clean of fingerprints. The police recovered the gun, three spent cartridges and two live rounds. Because of defendant's action, the police were unable to determine who held the gun when Mares was shot.

The instruction on the elements of the tampering charge required the State to prove that defendant hid the pistol with the intent to prevent the apprehension, prosecution or conviction of himself. Defendant contends the evidence is insufficient to show the required intent. We disagree. In addition to the evidence as to defendant hiding the gun, there is evidence that he told the police he did not know where the gun was, that it was probably lost on the way to the hospital.

There is substantial evidence that defendant tampered with physical evidence with the requisite intent. This tampering occurred before the police had any knowledge of the shooting or any belief as to how the shooting occurred. As a result of the tampering, there can be no determination of whether a crime occurred. These circumstances are consistent with the statutory definition of tampering in terms of defendant's conduct and intent, and our holding that the applicability of the statute does not depend upon whether a crime in fact occurred, or upon the knowledge or belief of the police.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.