**Certiorari Granted, No. 31,745, July 23, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-068**

**Filing Date: March 23, 2009**

**Docket No. 28,107**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**CLARENCE JACKSON,**

      **Defendant-Appellant.**


**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**William A. Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** The issue presented in this case is whether a person on probation who provides a false urine sample may be convicted of tampering with evidence in violation of NMSA 1978, Section 30-22-5(B)(4) (2003). Defendant moved to dismiss on grounds that such conduct

1

does not, by itself, constitute tampering with evidence. The district court denied Defendant's motion, and Defendant appeals. We reverse.

## I.   BACKGROUND

**{2}**    Defendant was charged with tampering with evidence in violation of Section 30-22-5(B), and Defendant filed a motion to dismiss, arguing that his conduct did not constitute tampering with evidence as a matter of law. The parties stipulated that the following facts would be presented if the case went to trial.

**{3}**    While on probation, Defendant was required to submit to random urinalyses. Defendant reported to the probation office to provide a urine sample and brought with him a bottle of clean urine hidden in his pants. Upon receiving the sample, the probation officer became suspicious because the urine specimen was not warm. The probation officer questioned Defendant, who denied he was hiding anything. However, as Defendant was leaving the restroom, a bottle of urine fell from his pocket and rolled on the floor. Defendant then admitted to the probation officer his attempt to provide a false urine sample.

**{4}**    Defendant's motion to dismiss asserted that the tampering with evidence statute only reaches conduct which interferes with the investigation or prosecution of a crime, and providing a false urine sample to his probation officer, without more, is only a probation violation. The district court ruled that Defendant's conduct falls within the statute and denied Defendant's motion to dismiss. Defendant then entered into a conditional plea to tampering with evidence, reserving his right to appeal the denial of his motion to dismiss.

## II.   DISCUSSION

**{5}**    The parties dispute whether an essential element of Section 30-22-5(B) is that the conduct interfere with the prosecution or investigation of a crime. The parties also dispute whether the 2003 amendments to the statute evidence a legislative intent that such an underlying crime is an essential element of the crime. These arguments require us to construe the statute, and our review is de novo. *See State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

### A.   Requirement of an Underlying Crime

**{6}**    The State asserts, "Defendant acted intentionally to prevent apprehension or prosecution of himself on a probation violation by passing off clean urine instead of his own. On its face, the statute requires nothing more." We reject this argument for the following reasons.

**{7}**    The tampering statute was enacted to punish those who deprive the state of evidence needed to investigate possible crimes. Section 30-22-5(A) defines tampering with evidence as "destroying, changing, hiding, placing or fabricating any physical evidence with intent

2

to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Initially, we point out that the tampering with evidence statute is included in Article 22, entitled "Interference with Law Enforcement." Sections 30-22-1 to -27 (1963, as amended through 2006). The plain language of the statute dictates that the Legislature intended to criminalize actions that impede the efforts of law enforcement. In *State v. Roybal*, 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct. App. 1992), we concluded that a conviction for tampering requires active disruption by the defendant of the investigatory process. Thus, in order to convict a defendant for tampering with evidence, we stated "there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively 'destroyed or hid physical evidence.'" *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515. Intent can be inferred from an overt act or the conduct of a defendant. *Id.*; *see also State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 (same).

**{8}** The State's argument wholly ignores the requirement of an intent to disrupt a police investigation into an underlying criminal act. The two cases relied upon by the State, *State v. Arellano*, 91 N.M. 195, 572 P.2d 223 (Ct. App. 1977), and *People v. Frayer*, 661 P.2d 1189 (Colo. Ct. App. 1982), *aff'd*, 684 P.2d 927 (Colo. 1984), do not support its position that Defendant in this case could be convicted on the basis of "passing off clean urine instead of his own."

**{9}** In *Arellano*, the defendant told police that the decedent had shot himself. The police had no reason to arrest anyone at the time for any crime believing it was a suicide. 91 N.M. at 196, 572 P.2d at 224. Police later learned that (1) the medical examiner could not determine whether the death was a homicide or suicide, (2) the defendant was alone in the car with the decedent when he was shot, or (3) the defendant gave the gun to his brother who wiped it clean of fingerprints. *Id.* Thus, the police were unable to determine who shot the gun. *Id.* at 197, 572 P.2d at 225. In holding that there was sufficient evidence of an overt act from which the jury could infer the defendant's intent to tamper with evidence, we found that the applicability of the statute does not depend on whether a crime in fact occurred or upon the knowledge or belief of the police because the circumstances were consistent with the statutory emphasis on the defendant's conduct and intent. In other words, there was substantial evidence that the defendant hid the pistol in order to prevent an official proceeding or investigation into whether he murdered the decedent. *Id.*

**{10}** The State's reliance on *Frayer* also fails. The State argues that the *Frayer* court upheld a conviction for tampering even though the defendant "was not hiding or destroying [evidence] to cover up some other crime." The State misreads the facts and holding in that case. In *Frayer*, a pharmacist suspected a phoned-in prescription was phony and alerted police that the defendant was on her way to the store to pick up the narcotic. 661 P.2d at 1190. When the defendant walked out of the store, a police officer was waiting and ordered her to stop. *Id.* The defendant tried to get into a waiting car, but the officer grabbed her and told her she was under arrest. *Id.* The defendant threw the bag containing the prescription

3

toward the car. *Id.* The officer retrieved the bottle, but the defendant grabbed it from him again and broke it. *Id.* As we noted in *Roybal*, 115 N.M. at 33, 846 P.2d at 339, the circumstances in *Frayer* are a typical example of the type of behavior that underlies a charge of tampering with evidence because in that case it was "relatively easy to infer [the defendant's] intent to thwart the officer's investigation" by destroying incriminating evidence *of a crime*. *Roybal*, 115 N.M. at 33, 846 P.2d at 339.

**{11}**    The State has not cited to any case—and we have found none—in which a defendant was convicted of tampering with evidence which did not relate to an underlying crime. Consequently, we hold that Section 30-22-5 reaches only conduct which interferes with the investigation or prosecution of a crime.

**{12}**    We therefore address whether the State proved that Defendant's conduct interfered with the investigation or prosecution of a crime. In our analysis, we assume, without deciding, that a probation officer is a police officer as this issue was not raised by the parties. *But see Vigil v. Martinez*, 113 N.M. 714, 720, 832 P.2d 405, 411 (Ct. App. 1992) (holding that parole and probation officers are not law enforcement officers under the New Mexico Tort Claims Act). The State argues, "[t]here is no dispute that the urine was a mandatory condition of his probation, intended to determine whether or not Defendant was using controlled substances." We agree that while not constituting sufficient evidence by itself, a positive drug test is relevant, circumstantial evidence in a prosecution for possession of a controlled substance. *State v. McCoy*, 116 N.M. 491, 497, 864 P.2d 307, 313 (Ct. App. 1993), *reversed on other grounds by State v. Hodge*, 118 N.M. 410, 882 P.2d 1 (1994). However, this record does not disclose Defendant's conditions of probation. There are fourteen standard conditions of probation that are typically imposed. N.M. Corr. Dep't Prob. & Parole Div., *Standard Probation Supervision available at*, http://corrections.state.nm.us/parole/std_supv.html. One standard condition is that the probationer "will not buy, sell, consume, possess or distribute any controlled substances." *Id.* Another condition is that the probationer "shall not possess, use or consume any alcoholic beverages." *Id.* A third standard condition is that the probationer will "provide urine or breath test specimens for laboratory analysis." *Id.* The record before us does not disclose whether one or both of the first two conditions applied to Defendant's probation. While possession of a controlled substance with the requisite intent may constitute a crime, possessing, using or consuming an alcoholic beverage by an adult is clearly not a crime. Thus, the record before us does not establish that Defendant's acts interfered with the investigation or prosecution of a crime, and there is no proof that Defendant acted with the intent to disrupt police from investigating whether he possessed illegal drugs.

**{13}**    It can be readily seen that while some violations of probation may also constitute violations of the criminal laws, not all probation violations fall into this category. Examples of other standard conditions of probation which may be imposed, the violation of which do not constitute crimes, include reporting to the probation officer as required; submitting reports to the probation officer as required; promptly replying to any correspondence or communications received from the probation office; getting permission from the probation

4

officer before changing a job or residence; and making an effort to obtain and hold employment. There are many others. In the case before us the record only establishes that Defendant committed a probation violation by providing a false urine sample to the probation officer. By itself, providing a false urine sample is not a crime and there was no other evidence presented that Defendant committed the crime of possession of a controlled substance. Without evidence that a violation of the criminal laws was being investigated or prosecuted by the probation officer, there is no tampering with evidence.

## B. Indeterminate Crime

**{14}** Prior to its 2003 amendment, the tampering statute provided that "[w]hoever commits tampering with evidence is guilty of a fourth degree felony." NMSA 1978, § 30-22-5 (1963, prior to 2003 amendment). As our Supreme Court has noted, that version of the statute "made no distinction based on the severity of the underlying crime, suggesting that the Legislature was not focused on the severity of the harm caused by tampering." *State v. DeGraff*, 2006-NMSC-011, ¶ 34, 139 N.M. 211, 131 P.3d 61.

**{15}** With the 2003 amendment, the Legislature changed the penalties for tampering with evidence based on the severity of the underlying crime. For example, if one acts to tamper with evidence in a capital, first degree, or second degree felony, the penalty is increased from a fourth degree felony to a third. Section 30-22-5(B)(1). And, if the crime is a third or fourth degree felony, the tampering penalty remains a fourth degree felony. Section 30-22-5(B)(2). Further, the 2003 amendment prescribes that if the crime is a misdemeanor or a petty misdemeanor, the tampering penalty is decreased to a petty misdemeanor. Section 30-22-5(B)(3). In this case, the charge was under Section 30-22-5(B)(4), which provides that "if the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth degree felony."

**{16}** We note first that possession of a controlled substance is clearly not one of the known indeterminate crimes. Nevertheless, the State argues that the term "indeterminate" in Section 30-22-5(B)(4) compels a conclusion that the Legislature intended to allow tampering with evidence without a corresponding underlying crime. The statute does not define indeterminate, and there is no legislative history for us to consider. Further, we are unable to conceive any circumstance where a crime can be considered indeterminate given that all crimes in New Mexico are classified as either misdemeanors or felonies of varying degrees. *See* NMSA 1978, § 31-18-13 (1993); § 31-18-15. The rule of lenity advises us that criminal statutes should be interpreted in a defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute. *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). In the absence of a clear indication that the Legislature intended to punish conduct which interferes with the investigation or prosecution of something which is not a crime, we apply the rule of lenity and do not presume that the Legislature intended to criminalize such conduct.

## C. No Crime Was Committed

5

**{17}**    In this case, the State provided no factual basis or argument to persuade us how changing a urine sample, without more, constitutes a misdemeanor or felony offense. The order of probation is not part of the record and there is no evidence of the facts surrounding the terms of Defendant's probation. As we have discussed, Defendant could have been convicted of tampering with evidence if he destroyed, changed, hid, placed, or fabricated a urine sample with the intent to prevent the apprehension, prosecution, or conviction for the crime of possession of drugs. However, the State did not make this argument to the district court nor did it do so in its brief on appeal. Thus, we do not consider it further. *See In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (explaining that a reviewing court will not consider issues not raised in the district court). Accordingly, we hold that there was no evidence to support Defendant's conviction for tampering with evidence.

### III.    CONCLUSION

**{18}**    We conclude that there was insufficient evidence to support the tampering with evidence charge. Defendant's conviction is reversed.

**{19}    IT IS SO ORDERED.**


**LINDA M. VANZI, Judge**


**WE CONCUR:**


**MICHAEL E. VIGIL, Judge**


**TIMOTHY L. GARCIA, Judge**


**Topic Index for *State v. Jackson*, No. 28,107**

| **CA** | **CRIMINAL PROCEDURE** |
| CA-CR | Conditions of Probation |

| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| CL-TE | Tampering with Evidence |

| **EV** | **EVIDENCE** |
| EV-DR | Drug Testing |

**ST**      **STATUTES**
ST-IP      Interpretation