# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-032

Filing Date: June 23, 2010

Docket No. 31,745

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

CLARENCE JACKSON,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
William A. Sanchez, District Judge

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

**{1}** Interpreting New Mexico's tampering with evidence statute, NMSA 1978, § 30-22-5 (2003), our Court of Appeals held that Defendant Clarence Jackson must have tampered with evidence of a separate, underlying crime, as opposed to evidence of a mere probation violation, and overturned his conviction. We analyze the wording, purpose, and history of our tampering statute, and reach a different conclusion. We hold that the crime of tampering with evidence is complete when the accused commits an act of tampering with the requisite specific intent to prevent the apprehension, prosecution or conviction of any person, regardless of whether the accused's objective is a separate crime or whether a separate

1

criminal investigation ever exists or could exist.  Accordingly, we reverse the Court of Appeals and uphold the tampering conviction.

**BACKGROUND**

**{2}**     Defendant was charged with a single count of tampering with evidence, in violation of Section 30-22-5(B)(4).  For purposes of his motion to dismiss the indictment, Defendant stipulated to the following facts.

**{3}**     While on probation, Defendant was required to submit to random urinalyses.  Defendant reported to the probation office to provide a urine sample and brought with him a bottle of presumably clean urine hidden in his pants.  Noting that the urine specimen was not warm, the probation officer became suspicious and questioned Defendant who denied he was hiding anything.  As Defendant was leaving the restroom, however, the bottle of urine fell from Defendant's pants and rolled on the floor.  Defendant then admitted to the probation officer his attempt to provide a false urine sample.

**{4}**     The grand jury returned an indictment for tampering with evidence, charging that Defendant "did change, hide, place or fabricate a piece of physical evidence; to wit:  a bottle of urine . . .; and did so to prevent the apprehension, prosecution or conviction of [himself], contrary to . . . Section 30-22-5(B)(4)."  Defendant filed a *Foulenfont* motion[1] to dismiss the indictment, arguing as a matter of statutory interpretation that the tampering statute only applies when the accused tampers with evidence of a separate, underlying crime.  *See State v. Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995).  Providing a false urine sample to his probation officer may be a probation violation, Defendant asserted, but not an independent crime.

**{5}**     The district court denied Defendant's motion to dismiss the indictment, stating:

> This Court does agree with the [S]tate that [Defendant] did provide a sample; in doing so, he tampered.  He interfered with the administration of justice. He was trying to avoid his own prosecution.  And I think that . . . falls within the meaning of tampering with evidence as it is set forth in our statute.

Defendant entered a conditional guilty plea, reserving the right to challenge his indictment in this appeal.  Accepting the plea for violation of Section 30-22-5(B)(4), the court sentenced Defendant to 18 months of supervised probation.

**{6}**     On appeal, the Court of Appeals reversed, agreeing with Defendant that the

---

[1]*Foulenfont* permits the accused to file a pretrial motion to challenge whether the facts alleged in the information or indictment, if proven, would constitute a crime as set forth in the applicable criminal statute.  119 N.M. at 790, 895 P.2d at 1331.

tampering statute "reaches only conduct which interferes with the investigation or prosecution of a crime." *State v. Jackson*, 2009-NMCA-068, ¶ 11, 146 N.M. 563, 212 P.3d 1117. The Court of Appeals concluded that the indictment should have been dismissed because the State had failed to prove or allege that Defendant had interfered with the investigation of a separate, underlying crime, and thus had failed to satisfy an essential element of the offense. *Id.* ¶ 12. We granted the State's petition for certiorari to determine whether Defendant's stipulated conduct, admitted for purposes of his plea, falls within the parameters of the tampering statute. We review this question of statutory interpretation de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

## DISCUSSION

### The Tampering Statute Does Not Require Proof of a Separate Underlying Crime

{7}     When called upon to interpret a statute, we look to the language and purpose of the statute to ascertain legislative intent. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994). Section 30-22-5 (hereinafter "tampering statute"), provides, in full:

> A.     Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another.
> B.     Whoever commits tampering with evidence shall be punished as follows:
> (1)     if the highest crime for which tampering with evidence is committed is a capital or first degree felony or a second degree felony, the person committing tampering with evidence is guilty of a third degree felony;
> (2)     if the highest crime for which tampering with evidence is committed is a third degree felony or a fourth degree felony, the person committing tampering with evidence is guilty of a fourth degree felony;
> (3)     if the highest crime for which tampering with evidence is committed is a misdemeanor or a petty misdemeanor, the person committing tampering with evidence is guilty of a petty misdemeanor; and
> (4)     if the highest crime for which tampering with evidence is committed is indeterminate, the person committing tampering with evidence is guilty of a fourth degree felony.

Defendant was specifically charged under Section 30-22-5(B)(4) of the tampering statute.

{8}     The first part of the tampering statute, Section (A), sets forth the elements of the offense. The *actus reus* is defined as "destroying, changing, hiding, placing or fabricating any physical evidence." Section (A) also provides for two alternative mental states that could support a tampering charge:   intent to prevent apprehension, prosecution, or

3

conviction; *or*, intent to throw suspicion of the commission of a crime upon another.

**{9}** There is no question that Defendant's stipulated conduct—falsifying his urine sample—satisfies the *actus reus* portion of the statute. The sole issue before us is whether, as an essential element of the tampering statute, the State had to allege that Defendant tampered with evidence of an identifiable, underlying crime. As explained in this Opinion, we conclude that the clear language of the statute makes tampering a specific intent crime, independent of any result or attendant circumstance. The crime of tampering with evidence is complete the moment the accused commits the prohibited act with the requisite mental state, regardless of whether any subsequent police investigation does or even could materialize.

**{10}** The purpose of the tampering statute is to protect the integrity of the criminal justice system. Tampering with evidence is uniquely offensive under the criminal code because when one acts intentionally to destroy, change, hide, place or fabricate physical evidence, that person seeks to deprive the criminal justice system of information. Lack of information can, in turn, deprive the justice system of an opportunity to establish guilt or innocence, or even to learn about the criminal or benign nature of someone's conduct. Similarly, when one acts intentionally to throw suspicion of the commission of a crime upon another, that person seeks through deception to direct the forces of the criminal justice system against a false target. If successful, these actions can have grave consequences on the administration of justice far beyond the contours of any specific crime.

**{11}** The tampering statute does not require proof of any result beyond the *actus reus*—the act of tampering. The State need not prove, for instance, that the accused actually avoided apprehension, prosecution or conviction, or that suspicion was actually cast upon another. Rather, the tampering statute only requires proof that such was the accused's *subjective intent* when he acted to destroy, change, hide, place or fabricate physical evidence. We caution, however, that the state must come forward with sufficient evidence from which the jury can infer both an overt act *and* the accused's subjective, specific intent. *See State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 ("[A]bsent both direct evidence of a defendant's specific intent to tamper and evidence of an overt act from which the jury may infer such intent, the evidence cannot support a tampering conviction.").

**{12}** Defendant cites several cases in support of his interpretation that tampering requires proof of an underlying crime. We find these cases unpersuasive. In *State v. Duran*, the police were investigating a murder, and the accused was charged with tampering because the police were unable to locate the murder weapon. 2006-NMSC-035, ¶ 13, 140 N.M. 94, 140 P.3d 515. We stated that to uphold the conviction for tampering "there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively 'destroyed or hid physical evidence.'" *Id.* ¶ 14. The Court of Appeals construed our holding in *Duran* as a general pronouncement on the required elements of tampering—that there be an underlying police investigation with which the accused interferes. *See Jackson*, 2009-NMCA-068, ¶ 7. But

4

we intended no such categorical conclusion.

**{13}**   *Duran* was simply an application of the tampering statute to the specific facts in that case, 2006-NMSC-035, ¶ 14, which included an active police investigation into a possible murder and the absence of the murder weapon.  As a practical matter, in most circumstances the act of tampering *will* involve a police investigation into an identifiable underlying crime. This might explain the Court of Appeals' reliance on *Duran*, and its observation that "the State has not cited to any case—and we have found none—in which a defendant was convicted of tampering with evidence which did not relate to an underlying crime." *Jackson*, 2009-NMCA-068, ¶ 11.

**{14}**   The Court's observation is likely true; it is also irrelevant.  Nothing in Section (A) *limits* tampering to circumstances where there is a separate, identifiable crime. The *mens rea* portion of the statute *does* cover intentional conduct which, by its nature, aims to prevent identification of an underlying offense or to obstruct an investigation.  But nothing in the statute makes that a prerequisite. In *State v. Arellano*, the Court of Appeals correctly observed that  the intent requirements of the tampering statute "can be met regardless of whether a crime has in fact been committed and regardless of any belief or knowledge by the police concerning crimes or suspected crimes, or cause by the police to apprehend an individual."  91 N.M. 195, 196, 572 P.2d 223, 224 (Ct. App. 1977).

**{15}**   In *Arellano,* the police were investigating what was either homicide or suicide; the gun had been wiped clear of fingerprints leaving the police unable to determine who held the gun when the victim was shot or whether a crime had been committed at all.  The Court of Appeals made clear that the crime of tampering "does not depend upon whether [homicide] in fact occurred, or upon the knowledge or belief of the police." *Id.* at 197, 572 P.2d at 225.  The crime of tampering occurred before the police had any knowledge at all; it occurred when the accused committed the necessary act with the necessary intent.

**{16}**   We agree.  As the statute intends, the proper focus should be on the accused's subjective, specific intent to blind or mislead law enforcement, regardless of whether his objective is ill-conceived, ultimately unsuccessful, or pertains to a separate  criminal investigation.  *See State v. Mendez*, 785 A.2d 945, 954 (N.J. Super. Ct. App. Div. 2001) (upholding  tampering conviction where the defendant held a bag of white, powdery substance out the window of a moving car while being chased by police, thereby destroying the only evidence of a possible underlying crime); *see also Anderson v. State*, 996 So. 2d 256, 257 (Fla. Dist. Ct. App. 2008) (per curiam) (upholding conviction where the accused threw something into a urinal upon being confronted by police in a bathroom, establishing prima facie case of tampering with evidence, even though the substance turned out *not* to be contraband).

**{17}**   Several other states have specific intent statutes similar to ours, and their courts have interpreted those statutes in a manner consistent with our interpretation today.  *See* Jamie S. Gorelick et al., *Destruction of Evidence* § 5.8, at 192 (1989)  ("Georgia, Illinois, Iowa,

5

Louisiana, Maine, New Jersey, New Mexico, and Pennsylvania . . . require only a specific intent to hinder the apprehension or punishment of a criminal."). For example, the Illinois statute provides: "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts: . . . Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information . . . ." 720 Ill. Comp. Stat. 5/31-4 (1998). In *People v. Smith*, the defendant swallowed what police thought to be contraband. 786 N.E.2d 1121 (Ill. App. Ct. 2003). Applying the obstruction statute, the Illinois appellate court held that "the fact that an obstruction of justice is successful, the fact that it prevents the prosecution of the underlying offense, does not prevent the prosecution of the obstruction charge." *Id.* at 1125-26; *see also Phillips v. State*, 530 S.E.2d 1, 2 (Ga. Ct. App. 2000) (allowing jury inference of intent to prevent apprehension or obstruct prosecution, despite acquittal on possession charge). As these cases illustrate, when the language of the statute focuses on the specific intent of the accused, the state need not allege any underlying crime to seek a conviction for tampering with evidence.

**{18}** Finally, the fact that Defendant could have been apprehended for his conduct is further persuasive evidence that he possessed the requisite mental state under the tampering statute. Certainly one can be apprehended, prosecuted, or convicted for committing a crime. But while one can only be prosecuted or convicted for some underlying crime, a person can be apprehended even when no crime is charged. *See Black's Law Dictionary* (rev. 4th ed. 1968) (defining "apprehend" as "[t]o take hold of . . . to take a person on a criminal process; to seize; to arrest"); *see also Black's Law Dictionary* (rev. 8th ed. 2004) (defining "apprehension" as "[s]eizure in the name of the law"). The Legislature's use of the word "apprehension" evinces its intent to reach obstructive conduct beyond that which the accused believes might result in prosecution or conviction.

**{19}** We also observe that Defendant's actions to conceal the true content of his urine could have resulted in criminal sanctions, including the initial apprehension by law enforcement. *See* NMSA 1978, § 31-21-15(A)(1) (1989) ("At any time during probation . . . the court may issue a warrant for the arrest of a probationer for violation of any of the conditions of release. The warrant shall authorize the return of the probationer to the custody of the court or to any suitable detention facility designated by the court."). A probation violation may not be a crime in itself, *see State v. Foster*, 1998-NMCA-147, ¶ 10, 125 N.M. 830, 965 P.2d 949, but it commonly results in the court enforcing a criminal sentence: the sentence originally imposed but suspended in lieu of probation. In this case, Defendant could have been apprehended and incarcerated for all or a part of his remaining sentence for violating probation,[2] and it was reasonable for the jury to infer his intent to

---

[2]Defendant was on probation following a 2006 conviction for the felony of issuing or transferring. It appears that his sentence in that case was running concurrently with his conviction in another case for nine separate traffic offenses and one count of tampering with evidence.

6

avoid this consequence. While Defendant's subjective fear of apprehension does not depend on whether such fear is justified by the law, the fact that it was in this case is simply further and persuasive evidence that Defendant's subjective intent satisfied the *mens rea* portion of the tampering statute.

**The History of Recent Changes to the Tampering Statute Supports the State**

**{20}** Defendant looks to the "indeterminate crime" provision, Section 30-22-5(B)(4) of the statute, which the Court of Appeals also found persuasive. As quoted earlier, Section (B) establishes levels of punishment depending on the degree of crime "for which tampering with evidence is committed." Section (B)(4) then makes it a fourth degree felony "if the highest crime for which tampering with evidence is committed is indeterminate."

**{21}** This language expresses a legislative intent to equate the gravity of the tampering with the level of the underlying crime, if any. However, from that same language Defendant would have us *infer* a legislative intent to *require* an underlying crime for tampering—if not in Section (A), which defines tampering, then in Section (B), which prescribes the different levels of punishment. While we acknowledge Defendant's observation that each of Section (B)'s provisions contain the word "crime," the inference he draws from Section (B)(4) goes too far. Drawing on the history of the tampering statute for guidance, we conclude that the Legislature included the "indeterminate crime" provision, Section 30-22-5(B)(4), to punish acts of tampering with evidence where no underlying crime could be identified.

**{22}** Prior to a 2003 amendment which codified Section (B) in its current form, the first part of the tampering statute read exactly as the current Section (A), setting forth the *actus reus* and *mens rea* of the offense of tampering with evidence.[3] The second part of the statute stated simply that "[w]hoever commits tampering with evidence is guilty of a fourth degree felony." *See* § 30-22-5 (2002). Under that version of the statute, one who destroyed a murder weapon, for example, was subject to the same punishment as one who destroyed a small quantity of marijuana. It was all a fourth degree felony, regardless of the consequences to the criminal justice system.

**{23}** At Defendant's hearing on his motion to dismiss, defense counsel posited that the Legislature might have attempted to fix this "draconian" measure with the 2003 amendment. Indeed, the 2003 amendment *did* correct this perceived inequity by establishing a graded scale that imposes a more severe punishment on one who tampers with evidence of a first degree felony, than on one who tampers with evidence of a mere misdemeanor. *See* § 30-22-5(B)(1)-(4).

---

[3]The previous version of the tampering statute was enacted in 1963 and remained unchanged until the 2003 amendment. *See* NMSA 1953, § 40A-22-5 (Vol. 6, Repl.); 1963 N.M. Laws, ch. 303, § 22-5.

7

**{24}** Important to our analysis, Defendant's conduct in this very case—concealing evidence of a potential probation violation—would have constituted tampering with evidence during the years prior to 2003. As we have explained, the language of Section (A), which remains unchanged, has never required an underlying crime. Prior to 2003, tampering was a fourth degree felony without any reference to the effect of tampering on an underlying crime; it was that way for 40 years (1963-2003). *See* § 40A-22-5; 1963 N.M. Laws, ch. 303, § 22-5.

**{25}** The Legislature was not writing on a blank slate in 2003. Assuming, therefore, that Defendant's conduct—tampering with evidence of a probation violation—would always have been a crime during those four decades, we must inquire whether there is any evidence that the 2003 Legislature intended, in effect, to de-criminalize prior penal conduct. What evidence is there that the Legislature intended to *narrow* the scope of the tampering statute by requiring, for the first time in 40 years, a nexus with a separate, underlying crime? We find no such evidence, and none has been directed to us. Clearly, the Legislature intended a punishment more proportional to the gravity of what is being concealed—murder versus a mere misdemeanor—which makes for a tougher statute overall. There is no indication the Legislature intended any change beyond that.

**{26}** In Section (B)(4), the 2003 Legislature also created an entirely new object of criminal tampering: an "indeterminate" crime. Defendant argues that the term "indeterminate" is ambiguous, reasoning that, since every crime is either a felony or a misdemeanor, no crime is "indeterminate." Defendant suggests that the term thus has no meaning, and urges us to read it out of the tampering statute completely. In contrast, we understand the indeterminate crime provision to describe the very conduct at issue in this case.

**{27}** Under the current tampering statute, one who tampers with evidence of an "indeterminate crime" is guilty of the intermediate punishment available under Section (B), that of a fourth degree felony. Under the previous version of the statute, all violators were subject to the *same* punishment—also a fourth degree felony. Only with the advent of the graded scale came the necessity to devise a separate punishment for one who tampers with evidence of an indeterminate crime, and the Legislature chose to punish such conduct at the intermediate level.

**{28}** It is our duty, wherever possible, to give meaning to a statute's provisions. Construing a statute in a way that renders one of its provisions entirely superfluous should be our last resort. *See State v. Nick R.*, 2009-NMSC-050, ¶ 28, 147 N.M. 182, 218 P.3d 868 ("This Court has long held that we must avoid constructions of statutory amendments that would render the change unnecessary and meaningless." (internal quotation marks and citation omitted)); *Cromer v. J. W. Jones Constr. Co.*, 79 N.M. 179, 184, 441 P.2d 219, 224 (Ct. App. 1968) ("It is fundamental that a statute should be so construed that no word, clause, sentence provision or part thereof shall be rendered surplusage or superfluous."), *overruled on other grounds by Schiller v. Sw. Air Rangers, Inc.*, 87 N.M. 476, 476, 535 P.2d 1327, 1327 (1975). If one examines Section (B)(4) already assuming that an underlying

8

crime is required, Defendant's interpretation is inevitable. In contrast, our interpretation is that the "indeterminate crime" provision reflects the reality that where evidence has been tampered with, it may not always be possible to determine if there was an underlying crime, or what that crime was. It is reasonable to assume, therefore, that the Legislature intended Section (B)(4) as a kind of catch-all category, for acts of tampering which cannot necessarily be tied to an identifiable crime.

**{29}** To illustrate, consider the crime of conspiracy, which requires combining with another "for the purpose of committing a felony." NMSA 1978, § 30-28-2(A) (1979). Proof of an underlying target offense is an express element of the crime of conspiracy. Like the tampering statute, the conspiracy statute includes gradations of punishment, depending on the severity of the underlying target felony. Section 30-28-2(B). However, the conspiracy statute does not include a grade of punishment corresponding to an "indeterminate crime." *Id.* This follows from the very nature of conspiracy, because if the State has not established what crime Defendant has conspired to commit, it has not satisfied an express element of the offense, and there is no need to determine the appropriate punishment. By contrast, the 2003 Legislature created a new category of punishment for indeterminate crimes, which is not present in the conspiracy statute. It is only reasonable to assume that the Legislature intended a different result from the conspiracy paradigm.

**{30}** Defendant's interpretation can only be reconciled by *reading out* an express provision of the statute—the indeterminate crime provision—while *reading in* a substantive requirement: an underlying crime. The more prudent approach is to presume the Legislature left out what it intended to leave out, and included what it intended to include. *See Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 114 N.M. 78, 80, 835 P.2d 76, 78 (1992).

**{31}** Operating from this premise, the only consistent interpretation of the tampering statute is that the Legislature included the "indeterminate crime" category to punish the offense of tampering when it is "indeterminate" what crime, if any, was involved. We find especially persuasive the fact that a separate punishment provision for "indeterminate" crimes appears just once in the entire criminal code: at Section (B)(4) of the tampering statute. This suggests that the Legislature included the "indeterminate crime" provision in the tampering statute to address the unique nature of the crime of tampering with evidence. We would be ill-advised to ignore the Legislature's will. Faced with a choice between an entirely reasonable interpretation of the tampering statute's written words, and one that deprives those words of any meaning whatsoever, we are obliged to elect the former.

**CONCLUSION**

**{32}** The district court correctly denied Defendant's motion to dismiss the indictment. We reverse the Court of Appeals and reinstate Defendant's conviction and sentence for tampering with evidence.

{33}    IT IS SO ORDERED.

 

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Clarence Jackson*, No. 31,745**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CS | Conspiracy |
| CL-CG | Criminal Law, General |
| CL-OJ | Obstructing Justice |
| CL-SI | Specific Intent |
| CL-TM | Tampering |
| CL-TE | Tampering with Evidence |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-AT | Arrest |
| CA-EO | Elements of Offense |
| CA-GP | Guilty Plea |
| CA-PP | Plea and Plea Bargaining |
| CA-PM | Post Conviction Proceedings |
| CA-PD | Pre-prosecution Diversion Act |
| CA-PR | Pre-sentence Evaluation |
| CA-SO | Separate Offense |
| CA-SF | Stipulations |
| | |
| **EV** | **EVIDENCE** |

| | |
|---|---|
| EV-DN | Destruction of Evidence |
| | See Also: EVIDENCE, Tampering with Evidence |
| EV-EG | Evidence, General |
| EV-TM | Tampering with Evidence |
| | See Also: EVIDENCE, Destruction of Evidence, CRIMINAL LAW, Tampering |
| | |
| **ST** | **STATUTES** |
| ST-AP | Applicability |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |
| ST-VA | Vagueness |