**Certiorari Granted, November 2, 2012, No. 33,847**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-113**

**Filing Date: September 13, 2012**

**Docket No. 30,337**

**STATE OF NEW MEXICO**,

       **Plaintiff-Appellee,**

**v.**

**GUADALUPE URQUIZO,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** Defendant Guadalupe Urquizo was convicted of various crimes for the non-fatal stabbing of a correctional officer at the Curry County Detention Center with a jail-made weapon, commonly known as a "shank." In *State v. Urquizo* (*Urquizo I*), No. 30,337, slip op. (N.M. Ct. App. Nov. 23, 2011) (mem.), we affirmed Defendant's convictions holding

that (1) sufficient evidence was presented in support of the requisite deliberate intent to kill, and (2) the convictions for attempted first-degree murder and aggravated battery upon a peace officer did not violate double jeopardy based on *State v. Armendariz*, 2006-NMSC-036, 140 N.M. 182, 141 P.3d 526, and *State v. Swick* (*Swick I*), 2010-NMCA-098, 148 N.M. 895, 242 P.3d 462.

**{2}**     The New Mexico Supreme Court subsequently issued a writ of certiorari in *State v. Urquizo*, 2012-NMCERT-001, ___ P.3d ___, to review only "issue numbered two"—the double jeopardy issue.  The case, however, was held in abeyance pending the outcome of *State v. Swick* (*Swick II*), 2012-NMSC-018, 279 P.3d 747.  Because *Swick II* ultimately reversed *Swick I* and overruled *Armendariz*—thereby modifying the double jeopardy analysis we were bound to apply in *Urquizo I*—our Supreme Court quashed the writ of certiorari and remanded to this Court for further proceedings in light of its disposition in *Swick II*.  *See State v. Urquizo*, No. 33,342 (order and mandate filed July 16, 2012).  We address on remand whether *Swick II* changes our conclusion in our previous memorandum opinion that "Defendant's convictions for attempted first-degree murder and aggravated battery do not violate double jeopardy."  *Urquizo I*, No. 30,337, slip op. at 2.  For the reasons that follow, we hold that it does not.

**{3}**     The facts on appeal are undisputed.  Essentially, Defendant—while imprisoned at Curry County Detention Center—attacked one of the correctional officers (Officer Casanova) during a dispute about the cancellation of his recreation period.  The attack was vicious but short in duration and amounted to Defendant stabbing Officer Casanova five times with a metal shank before being subdued by another officer on duty (Officer Turvey).  Both officers were struck by Defendant's shank in the melee.  A complete recitation of the event is set forth in our prior memorandum opinion.  *See Urquizo I*, No. 30,337, slip op. at 2-4.

**{4}**     Defendant was convicted on one count of attempted first-degree murder, contrary to NMSA 1978, Sections 30-28-1 (1963), 30-2-1 (1994); two counts of third-degree aggravated battery upon a peace officer (one count for each officer), contrary to NMSA 1978, Section 30-22-25(A) & (C) (1971); and one count of possession of a deadly weapon by a prisoner, contrary to NMSA 1978, Section 30-22-16 (1986).  On appeal, Defendant raised two points of error:  (1) sufficiency of the evidence regarding the intent element of attempted murder and (2) double jeopardy for the attempted murder conviction and the aggravated battery conviction for the attack on Officer Casanova.[1]  After our memorandum opinion in *Urquizo I*, which affirmed all convictions, Defendant sought review of both issues, but our Supreme Court only granted his petition as to the double jeopardy issue.  Thus, our analysis here focuses on the sole issue on remand:  whether Defendant's convictions for the attempted murder and aggravated battery of Officer Casanova violate double jeopardy in light of our

---

[1] The second count of aggravated battery for the attack on Officer Turvey and the possession of a deadly weapon were not challenged on appeal.

Supreme Court's recent opinion in *Swick II*.

**{5}** In *Urquizo I*, we characterized Defendant's double jeopardy argument as a "double-description" claim; i.e., Defendant was convicted under two separate statutes, which may or may not be considered the same offense for double jeopardy purposes. *Urquizo I*, No. 30,337, slip op. at 9-10 (citing *State v. O. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024). We then applied the *Swafford* test in what is "generally a two-part inquiry for double-description claims, first analyzing whether the conduct underlying the offenses is unitary; i.e., whether the same conduct violates both statutes[] and, if so, proceeding to analyze whether the [L]egislature intended to create separately punishable offenses." *Urquizo I*, No. 30,337, slip op. at 9-10 (internal quotation marks and citation omitted).

**{6}** With respect to the first prong, Defendant argued that the conduct underlying his convictions for aggravated battery and attempted murder was unitary, and the State conceded the point by choosing not to challenge it on appeal. We then proceeded to the second prong—legislative intent—and determined based on binding Supreme Court and Court of Appeals caselaw that the Legislature intended separate punishment:

> Controlling precedent exists with respect to [the d]efendant's challenge to his convictions for attempted murder and for aggravated battery with a deadly weapon. In [*Armendariz*], our Supreme Court held that convictions for both attempted murder and for aggravated battery with a deadly weapon do not present a double jeopardy problem because the elements of the offenses are not subsumed within each other and because other factors indicate legislative intent to separately punish.

*Swick I*, 2010-NMCA-098, ¶ 20.

**{7}** Our Supreme Court in *Swick II* overturned that precedent, which was the basis of our analysis in *Urquizo I*, and held that the Legislature did not intend separate punishment. *See Swick II*, 2012-NMSC-018, ¶ 20 ("[T]he question before this Court is whether the Legislature authorized multiple punishments under the statutes for attempted murder and aggravated battery with a deadly weapon for the same conduct. We conclude that it did not."). In reaching its conclusion, the *Swick II* Court applied the modified *Blockburger* analysis, as previously adopted in *O. Gutierrez*, 2011-NMSC-024, ¶ 58: first determining whether one crime is subsumed within the other, and then analyzing other indicia of legislative intent, such as "the social harms addressed by each statute" and the difference in punishments. *Swick II*, 2012-NMSC-018, ¶ 29. It concluded that "considering the State's theory of the case, the aggravated battery elements were subsumed within the attempted murder elements" and therefore "the double jeopardy prohibition [was] violated." *Id.* ¶ 27. Even so, the Court proceeded to address legislative intent to punish attempted murder and aggravated battery as separate offenses, which it concluded was ambiguous. That ambiguity, when coupled with the rule of lenity, convinced the Court to hold that multiple "convictions under the attempted murder and aggravated battery with a deadly weapon statutes arising

3

from unitary conduct . . . cannot stand" under the double jeopardy clause. *Id.* ¶ 30.

**{8}** We cannot discern the same commonality of elements or ambiguity in the legislative intent to punish separately with respect to the convictions before us. We do agree that the crime of attempted murder is inherently vague and requires application of the modified *Blockburger* test. "Under the attempted murder statutes, §§ 30-28-1 & 30-2-1, many forms of conduct can support the 'began to do an act which constituted a substantial part of Murder' element . . . [and is therefore] a generic, multipurpose statute that is 'vague and unspecific,' and [requires examination of] the [s]tate's theory of the case . . . ." *Swick II*, 2012-NMSC-018, ¶ 25. But even under the State's theory of the case, as demonstrated by the grand jury indictment, aggravated battery upon a peace officer is elementally distinct from attempted murder.

**{9}** According to Count I of the indictment in this case, to attain a conviction for first-degree attempted murder, the State had to prove the following:

> That on or about the 23rd day of October, 2008, in Curry County, New Mexico, the above-named Defendant did intend to commit a felony, to-wit: Murder, and did commit an overt act in furtherance of said felony, which act tended but failed to effect its commission, contrary to [Sections 30-28-1 and 30-2-1].

The State's presentation at trial clarified that the intended murder victim was Officer Casanova and the overt act was the stabbing of Officer Casanova multiple times with a shank.

**{10}** Count II, which charged Defendant with aggravated battery upon a peace officer, reads:

> That on or about the 23rd day of October, 2008, in Curry County, New Mexico, the above-named Defendant did unlawfully touch or apply force to the person of a peace officer, to-wit: David Casanova, with intent to inure [sic] that peace officer, and did so with a deadly weapon, to-wit: a shank, or did so in a manner whereby great bodily harm or death could be inflicted, while the officer was in the lawful discharge of his duties, contrary to [Section 30-22-25(A) and (C)].

Although the conduct of the aggravated battery upon a peace officer serves as the "overt act" for the attempted murder just as the aggravated battery did in *Swick II*, here the aggravated battery also required that Officer Casanova be a peace officer in the lawful discharge of his duties. That extraneous element prevents Defendant's conviction for aggravated battery upon a peace officer from being subsumed within his attempted-murder conviction. As this Court noted recently in *State v. S. Gutierrez*, the specific requirement that a victim of a battery also qualify as a household member prevented the battery-against-a-household-

4

member conviction from being subsumed within the robbery conviction. 2012-NMCA-095, ¶ 16, ___ P.3d ___ (No. 30,439, June 18, 2012). Likewise, the specific intent element of attempted first-degree murder prevents it from being subsumed within Defendant's conviction for aggravated battery upon a peace officer, which in this case was predicated upon use of a deadly weapon, not intent to kill. We thus conclude under the modified *Blockburger* test that an "inference" arises that the Legislature intended to punish Defendant's convictions separately. *See Swick II*, 2012-NMSC-018, ¶ 13.

**{11}** We are required to measure that inference against other indicia of legislative intent to ensure no ambiguity remains. Unlike *Swick II*, however, where the Court could not clearly discern the Legislature's intent with respect to separate punishment of aggravated battery and attempted murder, we encounter no such problem here. In *Swick II*, the Court concluded that legislative intent was ambiguous because (1) both statutes could be reasonably characterized as targeting "the social evil of harmful attacks on a person's physical safety and integrity," and (2) the disparity in punishments was indicative of an intent to punish grades of kindred crimes. *Id.* ¶¶ 29-30.

**{12}** The social harm targeted by the crime of aggravated battery upon a peace officer is distinct from that targeted by the crime of attempted murder. Aggravated battery upon a peace officer falls within an entirely different article of the Criminal Code (Article 22), entitled "Interference with Law Enforcement," than does general aggravated battery or attempted murder. According to those express categorical terms, the crimes in that article are designed to deter individuals from impeding the lawful activity of law enforcement. *State v. Jackson*, 2009-NMCA-068, ¶ 7, 146 N.M. 563, 212 P.3d 1117 ("The plain language of the statute dictates that the Legislature intended to criminalize actions that impede the efforts of law enforcement."), *rev'd on other grounds by* 2010-NMSC-032, 148 N.M. 452, 237 P.3d 754. Furthermore, many of the crimes listed in Article 22 are not merely targeted toward protecting officers from physical harm but toward the larger goal of ensuring the integrity of the criminal justice system. *See, e.g.*, NMSA 1978, § 30-22-3 (1963) (concealing identity); NMSA 1978, § 30-22-5 (2003) (tampering with evidence); NMSA 1978, § 30-22-18 (1963) (encouraging violation of probation, parole or bail). As we have previously noted, another purpose underlying the crime of aggravated battery upon a peace officer is to "protect peace officers in the lawful discharge of their duties from unlawful assaults and batteries." *State v. Nozie*, 2009-NMSC-018, ¶ 30, 146 N.M. 142, 207 P.3d 1119; *accord State v. Demongey*, 2008-NMCA-066, ¶ 22, 144 N.M. 333, 187 P.3d 679 (holding that the Legislature intended to separately punish attempted second-degree murder and assault on a peace officer with intent to commit a violent felony, in part because assault upon a peace officer falls into a category of crimes whose purpose is "aimed at protecting peace officers specifically, rather than the general public").

**{13}** While we recognize that both the likelihood of these crimes being committed together, and the disparate punishment between aggravated battery upon a peace officer (three years) and attempted first-degree murder (nine years), favor Defendant's assertion of their mutual incompatibility, we nonetheless hold that the Legislature intended separate

5

punishment in this instance.  *C.f. Demongey*, 2008-NMCA-066, ¶¶ 22-23 (holding that "punishment for attempted second degree murder and assault with intent to commit a violent felony on a peace officer is permissible," despite the disparate punishment and likelihood that the offenses "will generally be committed together," in part because "[t]he statutes at hand have different societal purposes"); *S. Gutierrez*, 2012-NMCA-095, ¶¶ 21-22 (holding that despite the disparate punishment between offenses, "a fact that initially favors [the d]efendant's position," the Legislature intended separate punishment for battery on a household member and robbery).

**{14}**   We hold that the Legislature intended to punish aggravated battery upon a peace officer and attempted first-degree murder separately.  The single most compelling indicia of legislative intent, with respect to the coupling of these crimes, is that the Legislature enacted a crime specifically designed to protect peace officers in a manner distinct from the generally applicable prohibition against aggravated battery and housed it under a special section, entitled "Interference with Law Enforcement," which generally targets behavior that impedes the proper administration of criminal justice.  *Compare* NMSA 1978, § 30-3-5 (1969), *with* § 30-22-25.  Despite *Swick II*'s holding that aggravated battery and attempted first-degree murder are not separately punishable, the clearly distinct social harms targeted by the crimes at issue here require the opposite result.

**CONCLUSION**

**{15}**   Having considered our holding in light of the New Mexico Supreme Court's modified "double description" type double jeopardy analysis in *Swick II*, we affirm Defendant's convictions for aggravated battery upon a peace officer and attempted first-degree murder.

**{16}   IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Urquizo*, No. 30,337**

**APPEAL AND ERROR**
Remand

6

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Assault or Battery on a Peace Officer
Attempt
Homicide
Weapon Offenses

**CRIMINAL PROCEDURE**
Double Jeopardy

**STATUTES**
Interpretation