## STATE V. LUJAN

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**JOHN LUJAN,**
**Defendant-Appellant.**

Docket No. A-1-CA-36296
COURT OF APPEALS OF NEW MEXICO
May 20, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Brett R. Loveless, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Meryl E. Francolini, Assistant Attorney General, Albuquerque, NM for Appellee

Bennett J. Baur, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

KRISTINA BOGARDUS, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge MEGAN P. DUFFY, Judge

**AUTHOR:** KRISTINA BOGARDUS

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**     Defendant John Lujan was convicted of aggravated burglary (deadly weapon) pursuant to NMSA 1978, Section 30-16-4(A) (1963); aggravated battery (deadly weapon) pursuant to NMSA 1978, Section 30-3-5(A), (C) (1969); and criminal damage to property ($1,000 or less) pursuant to NMSA 1978, Section 30-15-1 (1963). Defendant raises three issues on appeal: (1) whether there was sufficient evidence to support his

conviction for aggravated burglary; (2) alternatively, whether his convictions for both aggravated burglary and aggravated battery violate double jeopardy; and (3) whether the district court fundamentally erred by failing to properly instruct the jury on the deadly weapon element of both aggravated burglary and aggravated battery. We are not persuaded by Defendant's arguments for the reasons that follow and affirm.

**BACKGROUND**

**{2}**     Jose Gonzales (Victim) testified that, on the day of the incident, he was driving a friend's recreational vehicle (RV) in a parking lot when a woman accused him of backing into her car. Following that encounter, Victim went on his way, driving a couple of blocks before pulling over and parking on the side of the road. Shortly thereafter, Defendant drove up to Victim's parked RV, slammed on the brakes, and parked "catty-corner" in front of the RV, blocking it in. Defendant then jumped out of his car and ran toward the RV's driver side with a knife in his hand, yelling at Victim and accusing him of trying to kidnap his wife. Victim testified that the driver's window was rolled completely down as Defendant approached, yelling like he was "ready to fight or do some damage."

**{3}**     Defendant stabbed Victim in his left hip through the open driver's window. As Victim released the seatbelt and jumped out of the seat, Defendant cut him across his left forearm. A struggle then ensued over the knife, during which Defendant stabbed and cut Victim repeatedly. Victim was able to escape from the RV as Defendant shouted that Victim would bleed to death from his injuries. Victim required emergency medical treatment and was left with significant permanent injuries.

**{4}**     Following a jury trial, Defendant was found guilty of aggravated burglary (deadly weapon), aggravated battery (deadly weapon), and criminal damage to property ($1,000 or less). Because this is a non-precedential opinion, we discuss only those additional facts as necessary to our analysis.

**DISCUSSION**

**I.     Defendant's Unauthorized Entry Into the Open Window of the RV is Sufficient to Support His Conviction for Aggravated Burglary**

**{5}**     Defendant argues that his entry into victim's RV through the open window was merely "incidental" to the commission of aggravated battery and that the Legislature did not intend to punish such conduct separately as burglary. The State takes the opposite position, pointing out that the burglary statute does not make an exception for an "incidental" unauthorized entry and arguing that the Legislature clearly intended to punish Defendant's entry through Victim's RV window as an "unauthorized entry" under the burglary statute.

**{6}**     Whether the Legislature intended Defendant's unauthorized entry in this case to be punished as an aggravated burglary is a question of statutory interpretation. "Interpretation of a statute is an issue of law, not a question of fact, which we review de

novo." *State v. Trujillo*, 2012-NMCA-112, ¶ 7, 289 P.3d 238 (alteration, internal quotation marks, and citation omitted). "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of the statute," *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801, except when doing so "render[s] the statute's application absurd, unreasonable, or unjust." *State v. Rowell*, 1995-NMSC-079, ¶ 8, 121 N.M. 111, 908 P.2d 1379 (internal quotation marks and citation omitted). Defendant's argument requires us to construe New Mexico's aggravated burglary statute, Section 30-16-4(A), which, in relevant part, reads: "Aggravated burglary consists of the unauthorized entry of any vehicle . . . with intent to commit any felony or theft therein and the person . . . is armed with a deadly weapon."

**{7}**   Defendant contends that the "plain meaning of aggravated burglary does not include reaching into an open window while committing an aggravated battery[.]" In support of his argument that his conduct does not fall within the intended scope of the burglary statute, Defendant cites *State v. Office of the Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622. We are not persuaded that *Muqqddin* requires us to construe the burglary statute to exclude the entry in this case. We explain.

**{8}**   In *Muqqddin*, our Supreme Court noted that, over the course of forty years, we had "issued numerous opinions that, for the most part, have expanded significantly the reach of the burglary statute, an expansion that has occurred without any parallel change in the statute." *Id.* ¶ 1 (analyzing whether burglary charges, which are third- or fourth-degree felonies, were appropriate when the defendants' crimes would otherwise constitute misdemeanors). The Court continued:

> it has become more common to add a burglary charge to other crimes where the entry itself did not create or add any potential of greater harm than the completed crime. Our Legislature has never expressed an intent that burglary be used as an enhancement, nor has it clearly authorized the steady progression of judicial expansion of burglary as seen over the past 40 years.

*Id.* ¶ 3. In its analysis, the Court noted that it was interpreting the outer limits of the burglary statute and reasoned that analysis of those outer fringes requires consideration of "more than just the words of a statute." *Id.* ¶ 54. Ultimately, our Supreme Court held that a vehicle's gas tank and wheel wells do not constitute a protected space under the burglary statute, NMSA 1978, Section 30-16-3 (1971).[1] *Muqqddin*, 2012-NMSC-029, ¶ 12.

---

1 In *Muqqddin*, the Court was analyzing the burglary statute, Section 30-16-3, rather than the aggravated burglary statute, Section 30-16-4, at issue in this case. However, we note that the entry and intent requirements are identical in both statutes.

**{9}** In reaching its conclusion, our Supreme Court specifically acknowledged that "[a] window, by its nature, creates an opening in an enclosure, as opposed to a wheel well which is an open structure. As such, a burglary can be committed through an open window." *Id.* ¶ 48. Such an entry is exactly what is involved in this case, and it falls squarely within the conduct our burglary statute seeks to punish. The *Muqqddin* Court reasoned that burglary is primarily concerned with the right to exclude. *Id.* ¶ 41. "It is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary statutes." *Id.* ¶ 42. "The privacy interest that our modern burglary statute protects is related to, though broader than, the security of habitation. Both aim to protect against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space." *Id.* ¶ 43. Defendant's act of reaching through the open RV window to stab Victim violated those specifically identified security and privacy interests. Therefore, Defendant's unauthorized entry is the type of conduct our aggravated burglary statute seeks to punish.

**{10}** Defendant further argues that this Court should adopt an approach whereby burglary would not be punished separately if the unauthorized entry was "incidental to another crime" and suggests that this analysis is consistent with our Supreme Court's holding in *Muqqddin*. *Id.* ¶ 3 ("[I]t has become more common to add a burglary charge to other crimes where the entry itself did not create or add any potential of greater harm than the completed crime."). Defendant cites to our holding in *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, wherein we held that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." *Id.* ¶ 39. The *Trujillo* Court, adopting the majority view "that kidnapping statutes do not apply to unlawful confinements or movements 'incidental' to the commission of other felonies," *id.* ¶ 31 (internal quotation marks and citation omitted), acknowledged the basic inquiry is whether the defendant's actions increased his culpability "over and above his culpability for the other crime" and considered a number of factors from three tests employed by other states, *id.* ¶¶ 38-39.

**{11}** Defendant fails to explain how *Trujillo*'s rationale harmonizes with the *Muqqddin* analysis, which was not concerned with incidental unauthorized entries, but focused instead on what constituted a protected space under our burglary statute. Nor does Defendant persuade us that *Trujillo*'s rationale justifies departure from our longstanding view that "even though the completed crime of burglary is but a step taken toward another crime, it never merges with that completed crime." *Muqqddin*, 2012-NMSC-029, ¶ 62. We conclude that Defendant's conduct in this case was separately punishable under our aggravated burglary statute.

## II. Defendant's Convictions for Aggravated Burglary and Aggravated Battery Do Not Violate Double Jeopardy

**{12}** Defendant argues that his convictions for aggravated burglary and aggravated battery resulted in multiple punishments for the same conduct and, therefore, violate

double jeopardy. The State contends that Defendant's conduct was not unitary and, even if it was, the Legislature intended to punish the offenses separately.

**{13}** We review Defendant's double jeopardy claim de novo. *See State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289 ("A double jeopardy claim is a question of law that we review de novo."). "The constitution protects against both successive prosecutions and multiple punishments for the same offense." *State v. Sena*, 2018-NMCA-037, ¶ 35, 419 P.3d 1240; *see* U.S. Const. amend. V; N.M. Const. art. II. Defendant raises a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes[.]" *Bernal*, 2006-NMSC-050, ¶ 7.

**{14}** To analyze Defendant's double-description challenge, we employ the two-part test set out in *Swafford v. State*, which requires us to examine: (1) whether the conduct is unitary, and (2) whether the Legislature intended the offenses to be punished separately. 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

**{15}** In double-description cases, conduct is not unitary and multiple punishments are authorized if there is "an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61; *see State v. Melendrez*, 2014-NMCA-062, ¶ 10, 326 P.3d 1126 ("[W]hen there is an identifiable point between the completion of one crime and the beginning of another, conduct is not unitary and multiple punishments are authorized."). It is well settled that "[t]he offense of aggravated burglary is complete upon unauthorized entry, with the requisite intent, while armed with a deadly weapon." *State v. Montoya*, 2016-NMCA-098, ¶ 21, 384 P.3d 1114; *see Muqqddin*, 2012-NMSC-029, ¶ 41; *State v. Ramirez*, 2016-NMCA-072, ¶ 16, 387 P.3d 266. Therefore, Defendant completed the crime of aggravated burglary as soon as he, with requisite intent, gained entry into Victim's RV while armed with the knife. *See State v. Montoya*, 2011-NMCA-074, ¶ 34,150 N.M. 415, 259 P.3d 820. Because Defendant completed the crime of aggravated burglary before he committed the crime of aggravated battery, we conclude that his conduct was not unitary and need not reach the second part of the *Swafford* test. *See Swafford*, 1991-NMSC-043, ¶ 25. We hold, therefore, that Defendant's convictions for aggravated burglary and aggravated battery do not violate his right to be free from double jeopardy.

## III. The District Court's Failure to Properly Instruct the Jury Did Not Constitute Fundamental Error

**{16}** Having made no objection to any of the jury instructions at trial, Defendant nonetheless argues the district court committed fundamental error by failing to instruct the jury that it must find that the knife was a deadly weapon in order to find him guilty of both aggravated burglary and aggravated battery. The State responds that Defendant did not challenge the knife's status as a deadly weapon and that the deadly weapon

status was not at issue during the trial. The State also contends that the deadly weapon element was "indisputably established" by the evidence presented at Defendant's trial; therefore, there was no fundamental error.

**{17}** Because Defendant did not object to the jury instructions at trial, our review is for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that unpreserved issues relating to jury instructions are reviewed for fundamental error). Under this standard, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). Juror confusion or misdirection occurs "not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of relevant law." *Id.* We bear in mind in our review that "[t]he rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

## A.    NMSA 1978, Section 30-1-12(B) (1963) and the Uniform Jury Instructions

**{18}** The crimes charged in this case are predicated on Defendant's use of a deadly weapon, and unless the Legislature has identified the instrument or object as a deadly weapon in Section 30-1-12(B), the jury is required to make a determination of whether the instrument or object constitutes a deadly weapon.[2] Our Supreme Court has explained that Section 30-1-12(B) "represents an identification by the Legislature of those items which are so inherently dangerous that it is unnecessary to have a jury determine the 'dangerous weapon' element"; the items specifically listed in Section 30-1-12(B) are considered a deadly weapon as a matter of law. *State v. Traeger*, 2001-NMSC-022, ¶ 12, 130 N.M. 618, 29 P.3d 518.

**{19}** It is undisputed that the type of knife used by Defendant was not specifically identified in Section 30-1-12(B) (defining deadly weapon as including "any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, . . . switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted . . . or any other weapons with which dangerous wounds can be inflicted"). Before instructing the jury, the district court noted that the

---

2 The use notes of UJIs for the crimes charged specify that the jury is to make the determination of whether an instrument or object not listed in Section 30-1-12(B) is a deadly weapon. Use Note 3 of UJI 14-1632 NMRA, aggravated burglary (deadly weapon), directs the court to "[i]nsert the name of the weapon when the instrument is a deadly weapon as defined in Section 30-1-12(B) . . . or use the phrase 'an instrument or object which, when used as a weapon, could cause death or very serious injury[.]' " Similarly, Use Note 5 of UJI 14-322 NMRA, aggravated battery (deadly weapon), directs the court to instruct the jury as follows when the instrument or object used is not specifically listed in Section 30-1-12(B): "The defendant used a _____ (*name of instrument or object*). A _____ (*name of instrument or object*) is a deadly weapon only if you find that a _____ (*name of object*), when used as a weapon, could cause death or great bodily harm[.]"

instructions for aggravated burglary (deadly weapon) and aggravated battery (deadly weapon) identified the weapon only as a knife and asked if the knife was particularly enumerated in Section 30-1-12(B). The State conceded that it was not one of the specific knives identified in the statute, but argued that it fell under one of the statute's catch-all provisions: "all such weapons with which dangerous cuts can be given." *See* Section 30-1-12(B). The district court then specifically asked whether defense counsel had any objection to calling it a knife, and defense counsel had none.

**{20}**    The district court instructed the jury that a conviction for aggravated burglary (deadly weapon) required proof beyond a reasonable doubt that "[D]efendant entered a vehicle without authorization" with "intent to commit aggravated battery with a deadly weapon" and "[D]efendant was armed with a knife." The jury was instructed that a conviction for aggravated battery (deadly weapon) required proof beyond a reasonable doubt that "[D]efendant touched or applied force to [Victim] by stabbing him with a knife" and "[D]efendant intended to injure [Victim]." The district court also provided a separate instruction on the definition of deadly weapon as defined in Section 30-1-12(B). Contrary to the applicable UJIs, the instructions given at trial did not require the jury to find that the knife used by Defendant was a deadly weapon.

## B.    Analysis

**{21}**    "[I]t is the fundamental right of a criminal defendant to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt." *State v. Nick R.*, 2009-NMSC-050, ¶ 37, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). "[I]n an actual use [of a weapon] case involving an unlisted weapon, the jury must find, among other elements, that an object was actually used as a weapon and that it was capable of causing wounds described in the statute." *Id.*; *see Traeger*, 2001-NMSC-022, ¶ 10 ("When an individual uses an item that is a deadly weapon as a matter of law, the jury does not consider whether the weapon is a deadly weapon—it is presumed. However, when the item is not specifically listed, it has been the longstanding rule of this [s]tate to require a jury finding that the instrument was used as a deadly weapon.").

**{22}**    Even though the parties agreed that the knife fell under one of the statute's catch-all provisions, our appellate courts have made it clear that all knives are not deadly weapons as a matter of law. *See Nick R.*, 2009-NMSC-050, ¶¶ 24, 43 (holding that a pocket knife is not a per se deadly weapon because it was not listed in Section 30-1-12(B) and identifying the far reaching consequences of determining a pocket knife to be a per se deadly weapon); *State v. Radosevich*, 2016-NMCA-060, ¶ 8, 376 P.3d 871 (declining to categorize a "small kitchen knife" as a deadly weapon as a matter of law), *rev'd on other grounds by* 2018-NMSC-028, ¶ 34, 419 P.3d 176; *State v. Riddall*, 1991-NMCA-033, ¶¶ 3-19, 112 N.M. 78, 811 P.2d 576 (considering at length whether "butterfly knives" were switchblades under the possession of a deadly weapon statute). Because the knife in this case was not one of the per se deadly weapons listed in Section 30-1-12(B), the jury should have been instructed that it needed to make a finding regarding whether the knife was a deadly weapon. *See* UJI 14-1632; UJI 14-

322. Therefore, when the district court instructed the jury that it needed to determine only whether "[D]efendant was armed with a knife" in relation to the aggravated burglary and "[D]efendant touched or applied force to [Victim] by stabbing him with a knife" in relation to aggravated battery, it did so in error. However, for the following reasons, we conclude that the failure to properly instruct the jury does not rise to the level of fundamental error.

**{23}** "[W]hen there can be no dispute that the omitted element was established, fundamental error has not occurred and reversal of the conviction is not required." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. Victim testified about the nature and extent of the injuries he suffered to his left hip, left forearm, and right hand and fingers when he was repeatedly stabbed and cut by Defendant with the knife. The wounds were extensive enough to cause permanent nerve damage that extended from his left forearm down to his left thumb and to sever tendons in his right hand. Photographs of Victim's injuries were admitted and shown to the jury. Victim also testified that after he left the RV, Defendant was yelling, "You're going to bleed to death. You're going to die." In addition, Detective Bruce Arbogast described the knife as a folding, "construction-type knife, used for cutting, for [s]heetrock, for all types of stuff." Detective Arbogast testified that the knife could be a dangerous instrument if not handled with care, that someone could get killed from mishandling such an object and that he comes across similar knives in other violent crime scenes "[a]ll the time." The knife itself, which Victim described as having an approximately "4-inch blade with teeth at the end[,]" was admitted and shown to the jury. Based on the evidence presented to the jury, there can be no dispute that the knife as used by Defendant was a deadly weapon. Therefore, we conclude that the district court's failure to properly instruct the jury does not rise to the level of fundamental error.

## CONCLUSION

**{24}** For the foregoing reasons, we affirm Defendant's convictions.

**{25}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**MEGAN P. DUFFY, Judge**